1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

STEPHEN A. NELSON,

                Plaintiff,

v.

STELLAR SEAFOODS, INC.; SEVEN
SEAS FISHING COMPANY, *in personam*;
and the M/V STELLAR SEA, her engines,
tackle, gear, and appurtenances *in rem*,

                Defendants.

No.  C05-1620Z

FINDINGS OF FACT AND
CONCLUSIONS OF LAW

      This matter came on for trial on November 3, 2006, before the Court sitting without a jury.  Plaintiff was represented by Joseph Stacey and James Jacobsen of Beard Stacey Trueb & Jacobsen, LLP.  Defendants were represented by Allan MacDougall and Bradley Scarp of Montgomery Scarp MacDougall, PLLC.  At the conclusion of the case the Court took the case under advisement.  The Court has considered the evidence and exhibits admitted at trial, the deposition testimony of Brian Alford and Richard Gill, and counsels' arguments.  Being fully advised, the Court makes its Findings of Fact and Conclusions of Law as follows:

I.

FINDINGS OF FACT

      1.      Plaintiff Stephen Nelson is 37 years old.  He is a cook who began working aboard the M/V Stellar Sea in 2002.  Plaintiff had worked as a cook aboard the M/V Stellar Sea on at least four previous contracts before the voyage on which he was injured.  Plaintiff

FINDINGS OF FACT AND CONCLUSIONS OF LAW   1–

1  was responsible for menu planning, cooking, maintaining supplies, and supervising galley
2  helpers while he was on shift.  He was familiar with the ship's routine, supplies, and
3  equipment.

4    2. At all times material prior to his injury, Plaintiff was a "careful and
5  conscientious seaman."  <u>See</u> Exhibit 58.

6    3. Plaintiff was in the United States Navy from 1987 - 1989, until he was
7  discharged.

8    4. The Captain of the M/V Stellar Sea at the time of Plaintiff's injury was Brian
9  Alford.  Captain Alford had been captain of this vessel for thirteen years and has more than
10 35 years experience at sea on fishing and fish processing vessels.

11   5. The Chief Steward on the M/V Stellar Sea, Mr. Roland Patrick, shared cooking
12 duties with Plaintiff.  Because a fish processing vessel operates on a 24-hour basis, the
13 vessel's cooks work 12-hours on and 12-hours off.  On the voyage in question, Plaintiff
14 worked the day shift and Mr. Patrick worked the night shift.  Mr. Patrick had been working
15 on the M/V Stellar Sea for more than ten years, and had sailed on other vessels before the
16 M/V Stellar Sea.

17   6. On January 7, 2004, Plaintiff was notified that heavy weather was expected
18 and that he should further secure the galley for sea.  It was customary on the M/V Stellar Sea
19 to secure 50 pound bags of dry goods on a metal rack with an industrial bungee cord.  <u>See</u>
20 Exhibit A-14 (the metal rack) and Exhibit 62 (typical bungee cord).  A number of industrial-
21 grade bungee cords were kept in the galley of the M/V Stellar Sea for this purpose.  The
22 bungee cords were made of a flat piece of heavy black elastic, with a metal "S" hook
23 attached at each end.  The bungee cord was fastened to the metal rail of the rack upon which
24 the dry goods were placed, pulled over the sacks of dry goods, and attached at the other end
25 to a metal shelf above.

26

FINDINGS OF FACT AND CONCLUSIONS OF LAW   2–

7.      Bungee cords had been used in the galley of the M/V Stellar Sea to secure dry goods for at least ten years.  No injuries or accidents involving bungee cords had ever been reported, and no one, including Plaintiff, had even complained that bungee cords were inappropriate or unsafe for their intended use.

8.      Upon joining the vessel, Mr. Nelson had been instructed to use bungee cords to secure the dry stores.  He was instructed to hook the bottom first because if the top was hooked first it could snap back.  Mr. Nelson received no other particular training other than to secure the bottom of the cord first.

9.      On January 7, 2004, Plaintiff went to the dry stores room on the vessel and attempted to secure bags of flour, rice, or sugar lying on a "Metro" rack.  Mr. Nelson grabbed a bungee cord, placed the "S hook" in the Metro shelf's wire mesh, stretched the cord over the bags and was in the process of hooking the bungee cord to a metal shelf.

10.      The length of the bungee cord Plaintiff was using to secure the dry goods on January 7, 2004, was 30 inches plus the length of the metal "S" hooks affixed at either end. The total length of the bungee cord and the "S" hooks was approximately 36 inches.  The manufacturer's recommended operating range for an industrial bungee cord is 2.5 times its 30 inch length.  The distance Plaintiff was attempting to span with the bungee cord was approximately 45-47 inches, well within the cord's recommended usage.  Plaintiff admits he was not attempting to over-stretch the cord, and that he could pull it easily with one arm.

11.      While attempting to secure the dry goods with the bungee cord, the Plaintiff suffered a serious injury causing severe pain.  The parties dispute the manner in which the injury occurred.

12.      Plaintiff contends the bungee cord "failed or broke" as he was trying to stretch it over the dry goods.  Defendants contend the "cord came off the hold and struck him."

13.      Plaintiff testified at trial that he hooked the bottom of the bungee cord and it could not have come unhooked.

14.    Johanna Tonkin was a second cook on the M/V Stellar Sea at the time of the Plaintiff's injury.  She was about 30 feet away, heard Plaintiff scream and rushed to his aid. Tonkin testified Plaintiff told her immediately after the accident that the bungee cord had snapped back and had hit him.

15.    On the day of the accident, Tom Winiham (referred to in the case report as Tom Linehan) called the Health Force partners to seek medical advice.  The Health Force records, Exhibit 1, page 6, reflects that "a bungee cord broke loose" and hit the injured crew member.

16.    On January 10, 2004, three days after the accident, Plaintiff filled out an Alaska Department of Labor and Workforce Development Report of Occupational Injury or Illness, Exhibit 56.  In box 15 of the Report, Plaintiff described, in his own handwriting, how the injury happened as follows:

"While tieing down the galley I was stretching a bungy cord and the hook came off the hold and struck me in the right testicle."

17.    On January 12, 2004, Plaintiff filled out the worker information portion of an injury claim, Exhibit 3.  Nelson described how the injury occurred as follows:

"Tie down bungy cord broke free and struck me."

18.    The Coast Guard report of the accident, Exhibit 55, filled out and signed by Captain Brian Alford, states, in part, that the accident happened as follows:

"Steve was stretching a bungee cord over top of flour and sugar sacks when bottom of strap let go and hit him between the legs."  Exhibit 55 at pg. 644.

19.    On May 18, 2004, Plaintiff filled out the patient's information portion of a physicians initial report, Exhibit 4 pg. 25.  Plaintiff in his own handwritten explanation of how the injury occurred said:

"While securing the ship for rough weather I was struck in the right testicle by the "S" hook of a bungie cord."

FINDINGS OF FACT AND CONCLUSIONS OF LAW   4–

20.     At trial Plaintiff Nelson testified that several months after the accident Roland Patrick, the Chief Steward, told him "out of the blue" that "oh by the way" "that cord broke" referring to the bungee cord and Nelson's injury.

21.     At trial Roland Patrick denied ever learning from any source that the bungee cord broke and denied telling Plaintiff that the cord had broken.

22.     The Court finds that Roland Patrick did not make the statement to Plaintiff that the cord broke.

23.     Plaintiff's expert witness Captain R. Russell Johnson testified at trial that the "S" hook and bungee cord could not slip off the metal rack if properly secured.  Johnson testified that it was his opinion the bungee cord "somehow failed or broke."  Johnson, an experienced marine captain, is not an expert on bungee cords and his testimony was based almost entirely on research on the internet.

24.     If the cord had broken or failed, or the "S" hook detached from the cord, the lower portion of the cord would have fallen to the ground.  The upper portion of the cord was at all times in Plaintiff's hand.  Plaintiff could not have been injured as he reports as a result of the bungee cord breaking or failing.

25.     There is no evidence that the bungee cord in use was defective or damaged in any way.  No broken cord was ever found.

26.     The Court finds by a preponderance of the evidence that Plaintiff was injured because the "S" hook of the bungee cord came off the hold.  The Court further finds that the bungee cord used by Plaintiff did not break or fail.

27.     Plaintiff contends the Defendants were negligent in using bungee cords on the vessel.

28.     Any danger associated with the use of a bungee cord is open and obvious.  Many of the bungee cords on the vessel had warnings embossed on the elastic strap.  Plaintiff was familiar with bungee cords, and had used bungee cords to secure the vessel's

FINDINGS OF FACT AND CONCLUSIONS OF LAW   5–

1   dry goods on previous occasions without mishap.  Plaintiff's training and experience

2   adequately prepared him to use a bungee cord in a safe manner.

3       29.   Defendants were not negligent in the use of bungee cords to secure dry goods

4   on the M/V Stellar Sea.

5       30.   The M/V Stellar Sea was not unseaworthy because of the use of the bungee

6   cord to secure bags of flour and sugar in the galley and dry store room.  The bungee cords

7   were reasonably fit for their intended purpose.  The use of the bungee cord was not an

8   improper method for securing the stores under all the circumstances on the day of the

9   accident.

10      31.   As a result of the accident, Plaintiff suffered a severe injury requiring medical

11  care since his injury.  Doctors have performed three surgical procedures on Plaintiff,

12  including: 1) a right epididectomy on October 7, 2004; 2) a right testicular denervation on

13  July 29, 2005; and 3) a right scrotal hematoma evacuation on October 18, 2005.  The

14  detailed records and testimony disclose the seriousness of this injury.  The injury has

15  substantially affected Mr. Nelson's relationship with his wife.  I specifically credit Mrs.

16  Nelson's testimony in this regard and accept her version of how severely this injury has

17  affected Mr. Nelson's life.

18      32.   To date, Defendants have paid maintenance since Plaintiff left the service of

19  the vessel.  This is based on Plaintiff's contract for service with Defendants.  Doctor William

20  Loomis testified by telephone during the trial and the Court finds that Plaintiff will require

21  additional treatment of 2 visits per month for six additional months at an average cost of

22  $150.00 per session or a total of $1800.00.  The cost of these treatments should be paid by

23  Defendants as additional maintenance if Plaintiff incurs these costs.

24

25

26

FINDINGS OF FACT AND CONCLUSIONS OF LAW   6–

II.

CONCLUSIONS OF LAW

1.     Plaintiff filed this suit pursuant to the Jones Act, 46 U.S.C. § 688, and general maritime law.  The Court has jurisdiction of this matter pursuant to the Jones Act and 28 U.S.C. § 1333.  Venue is proper because Defendants reside here, and this is the home port for the M/V Stellar Sea.

2.     Plaintiff was a seaman within the meaning of the Jones Act on January 7, 2004.

3.     The elements of negligence are duty, breach, notice, and causation.  Ribitzki v. Canmar Reading & Bates, Ltd. P'ship, 111 F.3d 658, 662 (9th Cir. 1997).  To recover on his negligence claim, Plaintiff must prove by a preponderance of the evidence that Defendants were negligent, and that this negligence was the cause of his injuries.  Id.  The quantum of negligence needed to establish causation under the Jones Act is slight, but it must still be proven by a preponderance of the evidence.  In re Hechinger, 890 F.2d 202, 208 (9th Cir. 1989), cert. denied, 498 U.S. 848 (1990).

4.     A vessel owner has a duty to provide seamen a safe place to work.  Ribitzki, 111 F.3d at 662.  The owner is not required to assure absolute safety, but only to create an environment that is reasonably safe under the circumstances.  See Matson v. Navigation Co. v. Hansen, 132 F.2d 487, 488 (9th Cir. 1942).  "The test is whether the requirement of the sailor is one which a reasonably prudent superior would order under the circumstances."  Id.

5.     Defendants' duty to provide Plaintiff a safe place to work is satisfied by an environment that was "reasonably safe in the circumstances existing at the time."  Matson, 132 F.2d at 488.  No evidence exists to show that Defendants created an unsafe condition.  Bungee cords had been used in the ship's galley for at least ten years without incident, effectively securing dry stores.  Plaintiff himself had used a bungee cord to secure dry stores on the vessel on several voyages, never having a problem with either the cord or the storage, and never complaining to anyone that the cord was unsuitable for its intended use.  The

1    circumstances surrounding Plaintiff's alleged injury were unremarkable, he was performing a

2    routine task he had performed many times before.  Plaintiff has failed to establish that the

3    conditions on the vessel at the time of his injury were unreasonably dangerous under the

4    circumstances.

5        6.     Plaintiff also has failed to establish that Defendants were negligent by failing

6    to warn him of the dangers inherent in a bungee cord and failing to train him in its use.  "The

7    law does not impose a duty to warn of an obvious danger."  <u>Poston v. United States</u>, 396

8    F.2d 103, 107 (9th Cir. 1968); <u>see also</u> <u>Johnson v. Arctic Storm Inc.</u>, 99 Fed.Appx. 799, 800

9    (9th Cir. 2004).  Where the proper technique for using a product is obvious to someone with

10    the Plaintiff's background and experience, there is no duty to warn or to train on the

11    product's use.  The lack of danger is further demonstrated by Plaintiff's stated willingness to

12    not only allow but instruct subordinates in the galley to continue to use bungee cords on the

13    vessel after the claimed incident in January, 2004.

14        7.     Any danger associated with using a bungee cord is an open and obvious danger

15    for which no duty to warn or to train attaches.  The essence of a bungee cord is to secure an

16    object by using the tension created when the cord is stretched around it.  It is obvious that if

17    one end releases under sufficient tension, the cord will recoil toward the stationary end,

18    potentially striking anything in its way.  Accordingly, safely securing each end of the cord,

19    and standing to the side of the cord while stretching it are obvious techniques a person would

20    employ when using a bungee cord.  Defendants had no duty to warn or to train where

21    common knowledge and experience provides the needed information.

22        8.     Additionally, a vessel owner is not liable for hidden dangers of which s/he has

23    no knowledge.  "[T]he employer must have notice and the opportunity to correct an unsafe

24    condition before liability will attach."  <u>Havens v. F/T Polar Mist</u>, 996 F.2d 215, 218 (9th Cir.

25    1993); <u>see also</u> <u>Ribitzki</u>, 111 F.3d at 663 (liability found under Jones Act only if defendant

26    knew or should have known of dangerous condition).  Here, there is no evidence of a hidden

FINDINGS OF FACT AND CONCLUSIONS OF LAW   8–

1   danger.  Bungee cords had been used successfully on board the M/V Stellar Sea to secure dry

2   stores for more than ten years.  Plaintiff had used them without incident for several years

3   before his injury, and he had never been concerned for his safety.  Bungee cords had not

4   been the cause of other injuries, or even mishaps, aboard the vessel.  There is no evidence to

5   suggest that Defendants knew, or should have known, of any danger associated with bungee

6   cords before the accident occurred.

7       9.   Plaintiff claims that the M/V Stellar Sea was unseaworthy because the bungee

8   cord that is alleged to have injured him was unfit for its intended purpose - to secure 50

9   pound bags of dry goods in the ship's galley - and that it failed in its customary use, thus

10  rendering the vessel unseaworthy as a matter of law.  The duty a vessel owner owes seamen

11  is the same on an unseaworthiness claim as it is with a claim for negligence: the vessel owner

12  owes a duty to provide a seaworthy vessel and "appliances appurtenant thereto."  Webster v.

13  United States, No. 92 Civ 8037, 1995 WL 368429, at *6 (S.D.N.Y. June 20, 1995).

14      However, the vessel owner is not an insurer of a seaman's safety and need not provide
        an accident-proof ship; the mere fact that an injury or illness has been sustained on
15      board ship does not, standing alone, establish liability on the part of the shipowner.
        The duty to provide a seaworthy vessel "is a duty only to furnish a vessel and
16      appurtenances reasonably fit for their intended use.  The standard is not perfection,
        but reasonable fitness; not a ship that will weather every conceivable storm or
17      withstand every imaginable peril of the sea, but a vessel reasonably suitable for her
        intended service."

18

19  Id. at 17 (quoting Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 560 (1960)); see also

20  Finchen v. Holly-Matt, Inc., No. C04-1285RSM, 2006 WL 1687589, * at 15 (W.D. Wash.

21  June 20, 2006) (malfunctioning roller at the tip of boom on crab boat did not so adversely

22  affect operation of crane so as to constitute unseaworthy condition); "Reasonably fit" for its

23  intended use is measured by a "reasonable man" standard.  Allen v. Seacoast Prods., Inc.,

24  623 F.2d 355, 359-60 (5th Cir. 1980) overruled on other grounds by Gautreaux v. Scurlock

25  Marine, Inc., 107 F.3d 331, 339 (5th Cir. 1997).  Neither the newest nor the best equipment

26

1  is required, only equipment that is suitable for its intended use.  See Lee v. Pac. Far East

2  Line, 566 F.2d 65, 67 (9th Cir. 1977); Finchen, 2006 WL 1687589, at *15.

3      12.    To prevail, Plaintiff must show that (1) the warranty of seaworthiness extended

4  to him and his duties; (2) his injury was caused by a piece of the ship's equipment; (3) the

5  equipment was not reasonably fit for its intended use; and (4) the unseaworthy condition

6  proximately caused his injuries.  Ribitzki, 111 F.3d at 664-65.

7      13.    The parties have stipulated that Plaintiff was a seaman at the time of his

8  alleged injury, so the first element is not at issue.  The second element is also satisfied.

9  Plaintiff was injured by a bungee cord, which was part of the ship's equipment.

10      14.    Plaintiff has failed to establish the third element to prove unseaworthiness, that

11  the bungee cord was not reasonably fit for its intended use.  Plaintiff's expert, Captain

12  Johnson, offered his opinion that a bungee cord is not reasonably fit to secure dry stores on a

13  vessel, but by his own admission, Captain Johnson has no experience on a fish processing

14  vessel.  Captain Johnson does not have the experience to testify authoritatively about the

15  bungee cord's suitability for its intended use.  Moreover, the Chief Steward and the Captain

16  of the M/V Stellar Sea both testified that bungee cords have been used successfully to secure

17  dry stores for more than ten years, and have never been responsible for other injuries or

18  incidents on the ship.  The weight of the evidence shows that bungee cords are reasonably fit

19  for the use to which they have been put on board the vessel.

20      15.    Lastly, no unseaworthy condition proximately caused Plaintiff's injury.

21  Therefore, the fourth element is not satisfied.

22      16.    Defendants have paid Plaintiff all the maritime benefits to which he is

23  currently entitled as of the date of the trial.  Maintenance and cure may only be awarded for

24  the foreseeable future.  Lump sum awards are not favored.  Reopening of claims to obtain

25  future maintenance and cure benefits is the approach directed by the Supreme Court of the

26  United States.  See Calmar S.S. Corp. v. Taylor, 303 U.S. 525, 530-31 (1938); Farrel v.

FINDINGS OF FACT AND CONCLUSIONS OF LAW   10–

United States, 336 U.S. 511, 517-19 (1949).  Upon the proper showing, nothing in this judgment shall be construed to prejudice Plaintiff's rights to future maintenance and cure benefits should he need further medical care related to his injuries aboard the M/V Stellar Sea.  Defendant shall be obligated to pay the future costs of treatment with Doctor Loomis for a total of 12 visits and a cost of $150.00 per visit when, and if, such treatment occurs in the future.

17.    Plaintiff has failed to prove by a preponderance of the evidence his claim for negligence under the Jones Act.

18.    Plaintiff has failed to prove by a preponderance of the evidence his claim that the vessel was unseaworthy.

19.    The Clerk is directed to enter judgment in this case dismissing Plaintiff's claim for negligence and unseaworthiness and awarding Plaintiff recovery for future cure to the extent incurred in the amount not to exceed $1,800.00.  Plaintiff is entitled to taxable costs.

DATED this 8th day of December, 2006.

Thomas S. Zilly
United States District Judge

FINDINGS OF FACT AND CONCLUSIONS OF LAW   11–